**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0113-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JONATHAN E. TALIAFERRO,
a/k/a ANTHONY BUTLER,
ERIC BUTLER, ROBERT
JOHNSON, JOHNATHAN
TALIAFERRO, JONATHON
TALIFERRIO, JONATHAN
TALIFERRO, and ERIC
WRIGHT,

     Defendant-Appellant.

_____

Submitted October 2, 2019 – Decided December 3, 2020

Before Judges Rothstadt and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 14-04-0645.

Joseph E. Krakora, Public Defender, attorney for appellant (Rochelle Watson, Assistant Deputy Public Defender, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Jaimee M. Chasmer, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant appeals his September 8, 2017 conviction by a jury for possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1), and third-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(3).[1] He was sentenced to five years' imprisonment. Defendant also appeals from the trial judge's subsequent denial of his motion for a change in custody pursuant to Rule 3:21-10. On appeal, defendant argues that the officer who observed the drug transaction gave impermissible opinion testimony that he believed, based on his experience and training, that an exchange between defendant and another individual was a drug transaction.

Based on our review of the record and the governing legal principles, we conclude the testimony was not clearly capable of producing an unjust result and affirm the conviction. We remand the denial of the change-in-custody

---

[1] Defendant pled guilty to a separate indictment, No. 16-05-0691, for possession of PCP, and his four-year sentence on that conviction is consecutive to the sentence on this conviction.

application for more complete findings pursuant to Rule 1:7-4(a) and State v. Williams, 139 N.J. Super. 290 (App. Div. 1976).

We discern the following facts from the trial record. At trial, Officers Chowanec, Lowry, and Scanlon testified.[2] Chowanec testified that on November 6, 2013, Jersey City police officers assigned to the Narcotics Unit were conducting surveillance on Wade Street between Rutgers Avenue and Martin Luther King Drive. Officer Chowanec was in an unmarked police vehicle near 86 Wade Street and other officers were in "perimeter units" around the area.

Officer Chowanec observed defendant "walking up and down [Wade Street] waving to people, saying hello, waving at cars passing by in the area." The officer then observed James Waldron walking onto Wade Street from Rutgers Avenue. After defendant engaged Waldron in a brief conversation, he motioned Waldron to wait up the block, after which Waldron proceeded to 96 Wade Street.

The officer observed defendant enter an alleyway that ran between the buildings located at 84 and 86 Wade Street, "manipulate[] the siding of 86 Wade

---

[2] A forensic chemist also testified as to her analysis of four samples and concluded they contained cocaine, heroin, and marijuana.

Street, and from that siding . . . pull out a clear plastic bag." Defendant removed several small items from the bag. He then resecured the bag under the siding and walked out of the alleyway. Chowanec observed defendant approach Waldron, who had "folded up paper currency in his hand." Waldron handed defendant the money in exchange for the small items defendant had removed from the plastic bag.

The following colloquy between Chowanec and the prosecutor then took place:

> Q: Where did they go next?
>
> A: After the, what I believed to observe from my training and experience, was a drug transaction Mr. Waldron started walking westbound towards Martin Luther King Drive at a slow pace. Mr. Taliaferro stayed behind for under a minute and was kind of looking in all directions to make sure no one else was in the area.
>
> I noticed Mr. Waldron then make a left and walk south on Martin Luther King Drive out of my [sight] at this point. Mr. Taliaferro was also at a slow pace walking far enough behind Mr. Waldron and then followed him also a left on MLK Drive southbound out of my sight. The officer radioed the perimeter units with descriptions of Waldron and defendant.
>
> Q: What did you do once they left your sight?
>
> A: Based on, like I said before, based on my observations, my training and experience, I believe to

A-0113-17T1

be a narcotics transaction. I radioed both individual[']s descriptions and directions to awaiting perimeter units.

Defense counsel did not object on either of the two occasions that the officer characterized the exchange as a drug transaction.

In response to Chowanec's radioed description, Officer Lowry stopped Waldron on Rutgers Avenue As Lowry and his partner approached, Waldron "threw his hands up in the air . . . and tosse[d] a couple of objects out of his right hand to the ground." The discarded objects were "clear vials with black tops" containing suspected cocaine. Waldron was placed under arrest. At around the same time, Officer Scanlon stopped defendant and found him to be in possession of thirty dollars comprised of one ten-dollar bill, one five-dollar bill, and fifteen one- dollar bills. Defendant was also placed under arrest.

Chowanec, meanwhile, never left his original surveillance location because "where Mr. Taliaferro ducked down the alley, I believed to be a drug stash there, and I wanted to make sure that no one else went up the alley to try to take the drugs out of the area." After arresting defendant, Officer Lowry proceeded to 84 Wade Street, where he recovered, from underneath the siding of the building, clear vials with black tops containing suspected cocaine; glassine folds containing suspected heroin; and a bag containing small glassine envelopes of marijuana.

A-0113-17T1

After trial, defendant was convicted of third-degree possession of a CDS and third-degree possession of a CDS with intent to distribute. The jury acquitted him of the remaining charges.[3]

Defendant appeals his conviction, presenting the following points for our review:

---

[3] Defendant was originally charged in Hudson County Indictment No. 14-04-0645 with fourteen counts. With respect to the cocaine, defendant was charged with second-degree possession with intent to distribute within 500 feet of public housing, N.J.S.A. 2C:35-7.1(a), and third-degree possession, possession with intent to distribute, and possession with intent to distribute within 1000 feet of school property, N.J.S.A. 2C:35-10(a)(1), -5(a)(1), -5(b)(3), and -7(a) (counts one to four). With respect to the heroin, defendant was charged with second-degree possession with intent to distribute within 500 feet of public housing, N.J.S.A. 2C:35-7.1(a), and third-degree possession, possession with intent to distribute, and possession with intent to distribute within 1000 feet of school property, N.J.S.A. 2C:35-10(a)(1), -5(a)(1), -5(b)(3), and -7(a) (counts five to eight). With respect to the marijuana, defendant was charged with second-degree possession with intent to distribute within 500 feet of public housing, N.J.S.A. 2C:35-7.1(a), and third-degree possession with intent to distribute, and possession with intent to distribute within 1000 feet of school property, N.J.S.A. 2C:355(a)(1), -5(b)(3), and -7(a) (counts nine to eleven). With respect to the cocaine sold to Waldron, defendant was also charged with second and third-degree possession with intent to distribute, and possession with intent to distribute within 500 feet of public housing, N.J.S.A. 2C:35-5(a)(1), -5(b)(3) and -7.1(a) (counts twelve to fourteen). Following the close of the State's case, the trial court dismissed counts three, four, seven, eight, ten, eleven, thirteen and fourteen as there was no testimony regarding the school zone or public property charges.

A-0113-17T1

POINT I

THE INVESTIGATING OFFICER'S INADMISSIBLE OPINION TESTIMONY THAT THE CONDUCT HE OBSERVED WAS A DRUG TRANSACTION INVADED THE JURY'S FACT-FINDING PROVINCE AND CONSEQUENTLY DEPRIVED DEFENDANT OF A FAIR. (NOT RAISED BELOW)

POINT II

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A CHANGE OF CUSTODY.

First, we agree with defendant that Chowanec's testimony about observing what he believed based on his experience and training to be a drug transaction directly contravened the principles set forth in State v. McLean, 205 N.J. 438, 461–63 (2011), and State v. Brockington, 439 N.J.Super. 311, 321-24 (App. Div. 2015). As we observed in Brockington, the officer's testimony should have been confined to the facts as to what he observed, not his opinions, conclusions, or beliefs about what he saw. 439 N.J.Super. at 321–24.

We reject, however, defendant's assertion that Chowanec's admittedly improper testimony requires reversal. First, defense counsel's failure to object to the testimony means that we will not reverse absent plain error, i.e., a finding that the unobjected-to errors had a clear capacity to produce an unjust result. R. 2:10–2; State v. Macon, 57 N.J. 325, 337 (1971). See also State v. Echols, 199

7

N.J. 344, 360 (2009) ("Generally, if no objection was made to the improper remarks, the remarks will not be deemed prejudicial. Failure to make a timely objection indicates that defense counsel did not believe the remarks were prejudicial at the time they were made." (quoting State v. Timmendequas, 161 N.J. 515, 576 (1999))). Second, unlike the facts in McClean, 205 N.J. at 445-47, the officer's statement was not adduced by the prosecutor in a question that referenced the officer's experience and training.

Moreover, looking at the record stripped of the objectionable testimony, we conclude that the officer's unsolicited comments were not clearly capable of producing an unjust result. Chowanec continuously observed defendant and Waldron from the initiation of their contact, defendant pulling a plastic bag from underneath the siding, removing small items from the bag, and exchanging the items for the cash Waldron was holding in his hand. Thereafter, Waldron was almost immediately apprehended and found to be in possession of small vials with black tops containing cocaine. Defendant was also quickly apprehended with thirty dollars in small bills in his possession. Chowanec continued to observe the house where defendant removed the bag from the siding until Lowry arrived and retrieved from the siding clear vials with black tops containing suspected cocaine; glassine folds containing suspected heroin; and a bag

8

containing small glassine envelopes of marijuana. Because the lay testimony of the officers overwhelmingly supported the charges of which defendant was convicted, the interests of justice do not require reversal.[4]

Defendant next argues the trial judge erred in denying his motion for a change in custody pursuant to Rule 3:21-10. Unfortunately, we are hampered in our review of this issue because the judge did not adequately set forth his reasoning on the record or in his written decision. See R. 1:7-4(a). Accordingly, we are constrained to remand to allow the judge to expound on his reasons for denying the application, making specific reference to the factors set forth in Williams, 139 N.J. Super. at 299-300.

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] Indeed, that defendant received a fair trial is underscored by the jury's acquittal on all charges concerning possession and distribution of the drugs other than cocaine that were retrieved from the house.

A-0113-17T1